# In the United States Court of Federal Claims

No. 16-1259C
(Filed: December 16, 2016)
(Re-filed: January 17, 2017)[1]

* * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| IT SHOWS, INC., | |
| *Plaintiff,* | Post-award bid protest; Cost realism; Direct costs; Indirect costs; Ceiling rates. |
| v. | |
| THE UNITED STATES, | |
| *Defendant,* | |
| and | |
| SOCIAL SOLUTIONS INTERNATIONAL, INC., | |
| *Defendant-Intervenor*. | |

* * * * * * * * * * * * * * * * * * * *

*William T. Welch*, Reston, VA, for plaintiff.

*Joshua A. Mandlebaum*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Scott D. Austin*, Assistant Director, for defendant. R. Rene Dupuy, United States Agency for International Development, Washington, DC, of counsel.

*David S. Black*, Tysons, VA, with whom were *Gregory R. Hallmark*, Tysons, VA, and *Bryan T. Bunting*, Washington, DC, for intervenor.

---

[1] This opinion was originally issued under seal pursuant to the protective order entered in this case. The parties conferred and proposed appropriate redactions of protected information. Those redactions are indicated herein with brackets.

OPINION

Plaintiff, IT Shows, Inc., protests the United States Agency for International Development's ("USAID") award of a contract to the intervenor, Social Solutions International, Inc. ("SSI"), for the provision of human resources support services to the Bureau for Global Health. The parties have cross-moved for judgment on the administrative record. Plaintiff asks the court to permanently enjoin the award of the contract to the intervenor based on the current evaluations and require the agency to perform a re-evaluation of the existing proposals. Oral argument was held on December 9, 2016. As we announced at the conclusion of oral argument, because we find that SSI's proposal complied with the solicitation and that plaintiff failed to demonstrate that USAID's cost realism analysis was improper, we deny plaintiff's motion and grant defendant's and intervenor's cross-motions.

BACKGROUND

USAID issued request for proposal No. SOL-OAA-14-000024 ("RFP" or "solicitation") on March 7, 2014, seeking bids for a contract to provide non-direct-hire human resources support services to the Bureau for Global Health, related Washington, DC offices, and overseas field missions. The solicitation was for a cost-plus fixed fee contract for a five-year term, and it was designated as a small business set-aside. The contract was to be awarded to the offeror presenting the "best value" to the government. USAID prepared its own independent government cost estimate ("IGCE") and estimated a total cost plus fixed fee of $333,743,205 for the contract.

The solicitation instructed offerors to submit a technical proposal and a cost proposal. The technical proposal required the following sections, which the agency evaluated in descending order of importance: technical approach, corporate/institutional capability, past performance, and personnel. In their cost proposal, offerors were to provide a detailed cost-plus fixed fee budget based on their technical proposal and information contained in certain attachments to the RFP. In order to limit the government's maximum costs, offerors were to propose both provisional and ceiling rates for indirect overhead and indirect general and administrative ("G&A") costs. The RFP indicated that the cost proposals would undergo both a cost realism and a cost reasonableness analysis. The cost realism analysis was to be performed pursuant to Federal Acquisition Regulation ("FAR") 15.404-1(d) and the

solicitation further provided that "[f]or cost evaluation purposes, **the ceiling proposed . . . for indirect costs . . . will be used for the cost realism analysis**." Administrative Record ("AR")169 (emphasis supplied).

      USAID initially awarded the contract to IT Shows on August 7, 2015. At that time, IT Shows had a higher consensus technical rating and a lower price, undercutting SSI's probable cost of $[      ] by just under $[      ]. SSI protested the award at the Government Accountability Office ("GAO"). The GAO dismissed SSI's protest as academic on November 5, 2015 after USAID gave the GAO notice that it would take corrective action. Specifically, USAID provided a series of discussion questions to SSI and IT Shows and invited them to submit revised final proposals.

      At the conclusion of the corrective action, USAID conducted its final evaluation which resulted in SSI and IT Shows receiving equal technical ratings. The cost element of the two proposals, however, differed substantially. IT Shows' and SSI's final proposed costs were $[      ] and $259,457,580, respectively. USAID made cost realism adjustments to these proposed costs in order to determine the total probable cost of the proposals. As a result USAID adjusted IT Shows' proposed cost upward by $[      ] to a total probable cost of $[      ]. Over $8 million of the increase to IT Shows' proposed cost came from USAID's use of IT Shows' ceiling rate of [ ]% for its indirect overhead costs rather than its provisional rate of [ ]%. Similarly, USAID used IT Shows' [      ]% ceiling rate for its indirect G&A costs rather than its provisional rate of [      ]%. This adjustment resulted in an increase of just over $6 million to IT Shows' total estimated cost.

      USAID adjusted SSI's proposed cost upward by $4,683,035 to a total probable cost of $264,140,615. Unlike IT Shows, SSI proposed to bill all of its overhead costs directly. As a result, SSI did not have a ceiling rate for indirect overhead costs that could be applied during the cost realism analysis. Nevertheless, USAID adjusted SSI's direct overhead costs upward by $[      ] due to its skepticism towards SSI's plan to [                                                                 ]. With respect to indirect G&A costs, SSI proposed both a provisional and ceiling rate of [   ]%. Thus, USAID made only a minor upward adjustment of roughly $[      ] for SSI's G&A costs, which resulted from applying SSI's indirect ceiling G&A rate to USAID's upward adjustments to SSI's salary and wages, fringe benefits, and overhead cost categories.

The upshot of the cost realism adjustments was that SSI's probable cost was $[     ] less than that of IT Shows. The contracting officer determined that SSI's proposal presented the best value based on the equivalent technical merit of the proposals and SSI's lower cost. Accordingly, USAID awarded the contract to SSI on June 3, 2016.

IT Shows was notified of the award to SSI on June 6, 2016, and it requested a debriefing, which it received on June 10, 2016. IT Shows then filed a protest at GAO, arguing that USAID failed to perform a proper cost evaluation on both SSI's and IT Shows' cost proposals, asserting that USAID conducted improper discussions with IT Shows, and challenging USAID's technical evaluation. GAO denied the protest, holding, *inter alia*, that the adjustments to the technical ratings were unobjectionable and that, although GAO believed the solicitation required an indirect overhead cost ceiling from SSI, IT Shows did not demonstrate that it was prejudiced by USAID's actions. IT Shows then filed the present action on October 4, 2016.

## DISCUSSION

We have jurisdiction to render judgment on an action by an "interested party objecting to . . . the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (2012). IT Shows is an "interested party" because it was an "actual bidder[ ] or offeror[ ] whose direct economic interest would be affected by the award of the contract." *Am. Fed'n of Gov't Emps. v. United States*, 258 F.3d 1294, 1302 (Fed.Cir. 2001).

Our review is limited to the existing administrative record generated in connection with the procurement at issue. *See* RCFC 52.1. We review agency action in the bid protest context under the deferential standards of administrative review borrowed from the Administrative Procedures Act. *See* 28 U.S.C. § 1491(b)(4) (2012). USAID's actions can be enjoined only if we find them to have been "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) (2012). In the course of our review, we may not substitute our judgment for that of the agency. *See Redland Genstar, Inc. v. United States*, 39 Fed. Cl. 220, 231 (1997). All that is required of an agency is that it has a reasonable basis for its decision. *See Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed.Cir. 1989).

The protestor bears the burden of establishing that the agency's decision lacked a rational basis or was otherwise in violation of applicable law or regulation. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed.Cir. 2001). Additionally, plaintiff must show prejudice, meaning that, had it not been for the error in the procurement process, there is a reasonable likelihood that it would have been awarded the contract. *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed.Cir. 1996).

Plaintiff asks this court to permanently enjoin USAID from continuing the award of the contract to SSI in reliance on its cost evaluation and to require USAID to perform a re-evaluation of the existing proposals in accordance with the stated criteria for award in the RFP or order USAID to amend the RFP to meet the government's needs, if necessary, and seek new final proposal revisions from IT Shows and SSI.

Plaintiff argues that USAID's acceptance of SSI's proposal, despite its lack of a ceiling rate for indirect overhead costs, was improper and amounted to disparate treatment of the offerors. Specifically, plaintiff argues that Amendment No. 6 to the RFP required offerors to provide both provisional and ceiling rates for G&A and overhead indirect costs. Under plaintiff's view, USAID exceeded its authority and deviated from the RFP by allowing SSI to adopt a direct-bill methodology for overhead. Plaintiff asserts that it was unreasonable for USAID to conclude that SSI's direct-bill methodology was acceptable simply because the RFP did not expressly prohibit it. Thus plaintiff argues that USAID should have rejected SSI's proposal as non-responsive because it did not conform to the material terms of the solicitation.

Plaintiff also argues that USAID performed a flawed cost realism analysis of both proposals. With respect to SSI, plaintiff argues that SSI's final proposal, which resulted in a price reduction of over $[          ] compared to its proposal at the time of the initial award, should have raised red flags that SSI's price was unrealistically low. Plaintiff asserts that the nature of the work did not provide the opportunity for such a substantial reduction in price and that there were no material changes to the RFP following USAID's decision to take corrective action. Beyond these general concerns, plaintiff also identifies a number of SSI's specific cost elements that it feels should have been adjusted upward.

With respect to the cost realism analysis of IT Shows' proposal, plaintiff argues that the analysis did not comport with the requirements of FAR

15.404-1(d) because it did not result in a true probable cost figure. Plaintiff argues that USAID's use of IT Shows' ceiling rates for the estimate of its overhead and G&A indirect costs was improper because, rather than determining the probable cost of performance as required by the FAR, the agency merely used USAID's maximum possible cost exposure for those cost categories without any real analysis. Moreover, plaintiff argues that the cost realism analysis was unfair and prejudicial to IT Shows because USAID allowed SSI to avoid proposing the ceiling rates required by the RFP and SSI thereby avoided a substantial upward adjustment in the cost realism analysis.

      Plaintiff argues that USAID did not provide meaningful and adequate discussions to IT Shows because USAID did not inform IT Shows that it could bill overhead and G&A costs directly and thereby avoid proposing a ceiling rate. Plaintiff also argues that USAID should have used the discussions to inform IT Shows that it intended to use the ceiling rates on indirect costs for its cost realism analysis of IT Shows' G&A and overhead cost categories. Plaintiff further argues that, had it been so informed, it could have significantly reduced its total cost and fee, making these errors prejudicial to IT Shows.

      Defendant responds that SSI's direct-billing method is allowed under the RFP and that the solicitation does not require ceiling rates for overhead costs billed directly. Defendant asserts that there is nothing in the solicitation, including Amendment No. 6, prohibiting offerors from billing overhead costs directly, assuming the offeror's circumstances warrant it. Moreover, intervenor notes that IT Shows moved various budget items from the indirect overhead cost category to a direct charge cost.

      Defendant asserts that USAID did not have to inform IT Shows that it could bill overhead costs directly and thereby avoid proposing a ceiling rate. Defendant argues that these issues did not constitute a weakness or flaw in IT Shows' cost proposal that was significant enough to obligate USAID to address it during discussions. Moreover, intervenor points out that the agency, in fact, did instruct IT Shows that its indirect overhead pool should not include any overhead costs that met the FAR 2.101 definition of a "direct cost" and that IT Shows followed this instruction.

      Defendant argues that plaintiff's opposition to USAID's use of IT Shows' ceiling rates during its cost realism analysis is nothing more than an untimely objection to the terms of the solicitation because the RFP explicitly stated that USAID would use the ceiling rates in this manner. Moreover,

defendant argues that it was rational for USAID to use the ceiling rate in this instance because, as USAID explained at the time, the substantial difference between the provisional and ceiling rates reflected uncertainty as to what the government might face and thereby posed a risk to the government that called for pricing by use of provisional rates. Lastly, defendant argues that plaintiff has failed to show that it has a substantial chance of receiving the award but for the alleged errors in USAID's cost realism analysis in light of the $[    ] difference between the proposals.

I. SSI's Direct-Billing Method Complied with the Solicitation

We find that SSI's direct-billing method for its overhead costs complied with the terms of the solicitation and the relevant provisions of the FAR. Amendment No. 6 to the RFP, which deals with provisional and ceiling rates for indirect costs, suggests an assumption by the agency that some portion of an offeror's overhead costs will typically include indirect costs. However, SSI did not anticipate the need to use indirect costs with respect to overhead. Rather, SSI proposed to dedicate a project management office ("PMO"), the PMO's staff, and other overhead costs exclusively to this contract. Whether a cost is direct or indirect is an objective factual question. FAR 2.101 provides that "[c]osts identified specifically with a contract are direct costs of that contract." 48 C.F.R § 2.101 (2016). Here, each cost that SSI categorized as overhead identified specifically with this contract.  Nor did anything in the solicitation prohibit SSI from billing all of its overhead costs directly.  We hold that SSI did not fail to comply with the solicitation when it proposed use of direct overhead costs.

Plaintiff, moreover, ignores the fact that, following discussions with USAID, it removed several cost items from its indirect overhead rate calculation and charged them directly.  For example, it moved the salaries of the Program Manager and the Finance/Budget Specialist from the overhead pool to the salary cost category, AR 1343, prompting it to reduce its proposed overhead ceiling from [    ]% to [    ]%. AR 1353.  USAID determined that "[t]his was possible because in the previous budget, more than three-quarters of overhead costs consisted of the project-specific fringe benefits which have now been moved to the salary line, and nearly all the rest was for Key Personnel salaries which have now been moved to the Salary line." AR 1353. The difference for SSI is that, after it made similar corrections, it did not have any indirect overhead costs remaining with which to calculate an indirect overhead rate.  FAR 2.101 defines an "indirect cost" as "any cost not directly

7

identified with a single cost objective, but identified with two or more final cost objectives." 48 C.F.R. § 2.101. As mentioned above, SSI's PMO and its staff, along with SSI's other overhead costs, were dedicated exclusively to this contract. As a result, these costs were not indirect costs under the FAR. Plaintiff asks us to hold that USAID should have required SSI to operate under a fiction that its overhead costs were indirect costs in large part because such a designation would allow entries in all the boxes of a cost table provided in the solicitation. We are not persuaded and hold that the agency acted rationally in finding that SSI's proposal complied with the terms of the solicitation.

We also hold that USAID did not have to use discussions to inform IT Shows that it could bill its overhead and G&A expenses directly. The contracting officer has broad discretion over the scope and nature of discussions. *CACI Field Servs., Inc. v. United States*, 13 Cl. Ct. 718, 734 (1987). Generally, meaningful discussion must lead offerors into the areas of their proposals which require amplification to correct aspects of proposals that do not satisfy the solicitation requirements. *Omega World Travel, Inc. v. United States*, 54 Fed. Cl. 570, 576 (2002). However, such discussions "are designed to point out shortcomings in an offeror's proposal as judged from the standpoint of the government's stated needs, rather than from the standpoint of the proposal's relative competitiveness." *Structural Assocs., Inc./Comfort Sys. USA (Syracuse) Joint Venture v. United States*, 89 Fed.Cl. 735, 743-44 (2009). IT Shows' proposal satisfied the requirements of the solicitation and USAID determined that all of its costs were fair and reasonable. Accordingly, the contracting officer was not obligated to use the discussions to inform IT Shows that it had the option to bill its overhead costs directly.

We also note that the contracting officer used a discussion question in the overhead cost context to confirm that IT Shows was familiar with the FAR 2.101 definition of a direct cost. AR 1314. IT Shows responded that it understood the implications of FAR 2.101 and confirmed that all costs identified specifically with the contract were budgeted as direct costs. *Id*. In fact, as discussed above, IT Shows moved a number of different cost items from its overhead pool and charged them directly. As a result, IT Shows either knew or should have known that overhead costs could be billed directly.

II. USAID's Cost Realism Analysis of IT Shows and SSI Was Proper

We come now to plaintiff's separate contention that USAID performed a flawed cost realism analysis with respect to both cost proposals. Plaintiff

argues that USAID's use of IT Shows' ceiling rates for its cost realism analysis does not reflect an actual best estimate analysis of the probable cost of the proposal pursuant to FAR 15.404-1(d). Plaintiff's argument comes too late. The RFP specifically stated that "[f]or cost evaluation purposes, the ceiling proposed in section B for indirect costs and fee will be used for the cost realism analysis." AR 588. Thus IT Shows had notice that the agency intended to use the ceiling rates in this manner and it waived its ability to challenge this approach by not raising this issue prior to the close of the bidding process. *See Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007).

In any event, we hold that USAID provided a rational basis for its use of IT Shows' ceiling rates in its cost realism analysis. IT Shows' proposed provisional and ceiling rates, [ ]% and [ ]% respectively, for its indirect overhead costs differed substantially, making its ceiling rate nearly five times greater than its provisional rate. USAID's cost analyst took notice of the risk that this difference created for the government and suggested that the difference demonstrated "a high degree of uncertainty on [IT Shows'] part regarding the stability of this rate." AR 3829. It was thus rational for USAID to use IT Shows' ceiling rates in its cost realism analysis, given the high degree of uncertainty in the provisional rate and the fact that USAID could have been contractually obligated to pay the ceiling rate.

Similarly, USAID had a rational basis for using IT Shows' ceiling rate for its indirect G&A costs. IT Shows proposed provisional and ceiling G&A rates of [ ]% and [ ]%, respectively. Although there was less of a difference between the G&A rates compared to the overhead rates, USAID's cost analyst noted that the difference created a risk for the government and suggested "a significant degree of uncertainty on [IT Shows'] part regarding the stability of this rate." AR 3830. As a result, we find that USAID rationally used IT Shows' ceiling rates in its cost realism analysis of its G&A costs.[2]

---

[2] Plaintiff also made a number of arguments attempting to demonstrate that various budget items for SSI should have been adjusted upward during USAID's cost realism analysis. Defendant and Intervenor forcefully rebutted these arguments in their responses and cross-motions for summary judgment, and plaintiff never responded in any detail. We are persuaded that USAID's cost realism analysis of SSI's proposal was not arbitrary or capricious.

Plaintiff's argument that USAID should have used the discussions to remind IT Shows that it intended to use the ceiling rates on indirect costs during its cost realism analysis is unavailing. In order for the discussions to be meaningful, USAID was only obligated to address deficiencies or significant weaknesses in IT Shows' proposal to which it had not yet had an opportunity to respond. 48 C.F.R. § 15.306(d)(3). As discussed above, IT Shows' proposal satisfied the requirements of the RFP and all of its costs were determined to be fair and reasonable. As a result, we find that USAID conducted meaningful discussions and was not obligated to inform IT Shows of its intention to use the ceiling rates in its cost realism analysis.

Even assuming *arguendo* that it was improper for USAID to use IT Shows' ceiling rates in its cost realism analysis, IT Shows has not demonstrated that it was prejudiced by such an error. To prevail in a bid protest, the protestor must "show that it was prejudiced by a significant error in the procurement process." *Labatt Food Servs., Inc. v. United States*, 577 F.3d 1375, 1378 (Fed.Cir. 2009). IT Shows must demonstrate that there was "a 'substantial chance' it would have received the contract award but for the [agency's] errors." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1358 (Fed.Cir. 2005). Here, IT Shows cannot make this showing. USAID estimated that SSI's probable cost was roughly $[ ] million less than that of IT Shows. USAID's upward adjustment of IT Shows' indirect G&A and indirect overhead costs from the provisional rate to the ceiling rate totaled approximately $14.4 million. IT Shows never pointed the court towards a principled way that it could bridge the $[ ] million gap that remained. Accordingly, we hold that plaintiff has failed to demonstrate that it was prejudiced by USAID's alleged errors in the procurement process.

## CONCLUSION

Plaintiff has failed to show success on the merits. Thus we need not consider the other factors for injunctive relief. Accordingly, we deny plaintiff's motion for judgment on the administrative record and grant defendant's and intervenor's cross-motions for judgment on the administrative record. The clerk's office is directed to enter judgment for defendant. No costs.

s/Eric G. Bruggink
Eric G. Bruggink
Senior Judge